1  ROB BONTA, State Bar No. 202668
   Attorney General of California
2  JOHN D. ECHEVERRIA, State Bar No. 268843
   Supervising Deputy Attorney General
3  MARIA F. BUXTON, State Bar No. 318563
   JAY RUSSELL, State Bar No. 122626
4  MEGHAN H. STRONG, State Bar No. 324503
   Deputy Attorneys General
5    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA  94102-7004
6    Telephone:  (415) 510-3877
     Fax:  (415) 703-5480
7    E-mail:  Meghan.Strong@doj.ca.gov
   *Attorneys for Defendants California Governor*
8  *Gavin Newsom and California Attorney General*
   *Rob Bonta*

9                IN THE UNITED STATES DISTRICT COURT

10              FOR THE EASTERN DISTRICT OF CALIFORNIA

11

12

13

14  **THE GEO GROUP, INC., a Florida**          Case No. 2:24-cv-2924-DAD-CSK
    **Corporation,**

15

                                    Plaintiff,
16                                              **STATE DEFENDANTS' NOTICE OF**
                                                **MOTION AND MOTION TO DISMISS**
17       v.                                     **COMPLAINT; MEMORANDUM OF**
                                                **POINTS AND AUTHORITIES IN**
18  **GAVIN C. NEWSOM, in his official**        **SUPPORT**
    **capacity as Governor of the State of**
19  **California; ROB BONTA, in his official**  Date:        March 3, 2025
    **capacity as Attorney General of the State of**  Time:    1:30 p.m.
20  **California; and KRISTOPHER LYON, in**     Judge:       The Honorable Dale A. Drozd
    **his official capacity as Kern County Health**  Action Filed:  10/22/2024
21  **Officer,**

22                                  Defendants.

23

24

25

26

27

28

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on March 3, 2025, at 1:30 p.m., or as soon thereafter as counsel may be heard in the Courtroom of the Honorable Dale A. Drozd, located at 501 I Street, #3-100, Sacramento, California, Defendants Gavin C. Newsom, in his official capacity as Governor of the State of California, and Rob Bonta, in his official capacity as Attorney General of the State of California (together, "State Defendants"), will and hereby do move to dismiss Plaintiff The GEO Group, Inc.'s ("GEO") Complaint.

State Defendants move to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the grounds that GEO lacks standing, GEO has failed to state a plausible claim for relief, and sovereign immunity bars GEO's claims against Governor Newsom.  This Motion is based on this filing, the accompanying memorandum of points and authorities, State Defendants' Request for Judicial Notice, the papers and pleadings on file in this action, and such matters as may be presented to the Court at the time of the hearing.

Pursuant to Section I.C of the Court's Standing Order in Civil Cases, counsel for State Defendants hereby certifies that meet and confer efforts have been exhausted.  Counsel for all parties engaged in meet and confer efforts in an attempt to resolve this motion, including meeting via videoconference on November 13, 2024, November 18, 2024, November 21, 2024, and December 3, 2024.  The parties also conferred via email, including exchanging case authority in support of this Motion.  Despite these efforts, the parties were unable to resolve this Motion via stipulation.

///

///

///

///

1

2     Dated:  December 20, 2024                    Respectfully submitted,

3                                                  ROB BONTA
                                                   Attorney General of California
4                                                  JOHN D. ECHEVERRIA
                                                   Supervising Deputy Attorney General
5                                                  MARIA F. BUXTON
                                                   JAY RUSSELL
6                                                  Deputy Attorneys General

7

8
                                                   */s/ Meghan H. Strong*
9                                                  MEGHAN H. STRONG
                                                   Deputy Attorney General
10                                                 *Attorneys for Defendants California*
                                                   *Governor Gavin Newsom and California*
11                                                 *Attorney General Rob Bonta*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

State Defendants' Motion to Dismiss Complaint (2:24-cv-2924)

# TABLE OF CONTENTS

**Page**

Introduction ....................................................................................................................... 1

Background ......................................................................................................................... 2

    I.      The Attorney General's Ability to Inspect Detention Facilities Authorized by AB 103 ................................................................................................ 2

    II.     California's Extension of Inspection Authority to Local Health Officers via SB 1132 ...................................................................................................... 4

    III.    GEO's Lawsuit ......................................................................................... 6

Legal Standard ................................................................................................................... 7

Argument ............................................................................................................................ 8

    I.      SB 1132 Is an Inspection-Only Statute That Does Not Impose Any Compliance Standards on Private Detention Facilities ......................... 8

    II.     GEO Lacks Standing ............................................................................. 11

    III.    GEO Fails to State a Plausible Claim ................................................... 13

         A.    SB 1132 Does Not Violate the Intergovernmental Immunity Doctrine ...................................................................................... 14

         B.    SB 1132 Is Not Preempted by Federal Law ................................ 16

             1.    Field Preemption ................................................................. 16

             2.    Obstacle Preemption .......................................................... 18

    IV.    Sovereign Immunity Bars GEO's Claims Against Governor Newsom ............... 19

Conclusion ...................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page**

CASES

*Arizona v. United States*
567 U.S. 387 (2012) ................................................................................................. 18

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ................................................................................................... 7

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*
729 F.3d 937 (9th Cir. 2013) .................................................................................. 20

*Babbitt v. United Farm Workers Nat'l Union*
442 U.S. 289 (1979) ................................................................................................. 11

*Balistreri v. Pacifica Police Dep't*
901 F.2d 696 (9th Cir. 1988) .................................................................................... 7

*Bassett v. ABM Parking Servs., Inc.*
883 F.3d 776 (9th Cir. 2018) .................................................................................. 12

*Bates v. Dow Agrosciences LLC*
544 U.S. 431 (2005) ................................................................................................. 18

*BedRoc Ltd., LLC v. United States*
541 U.S. 176 (2004) ................................................................................................... 8

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) ................................................................................................... 7

*Cal. Fed. Savings & Loan Ass'n v. City of Los Angeles*
11 Cal. 4th 342 (1995) ............................................................................................... 9

*Chao Chen v. Geo Grp., Inc.*
287 F. Supp. 3d 1158 (W.D. Wash. 2017) ............................................................. 17

*Clark v. City of Seattle*
899 F.3d 802 (9th Cir. 2018) .................................................................................. 12

*Coal. of Concerned Cmty., Inc. v. City of Los Angeles*
34 Cal. 4th 733 (2004) ............................................................................................... 9

*Dwinnell, LLC v. McCullough*
No. 2:23-CV-10029-SB-KS, 2024 WL 3009300 (C.D. Cal. May 17, 2024) ........................ 13

*Fox v. Washington*
236 U.S. 273 (1915) ................................................................................................. 18

iv

# TABLE OF AUTHORITIES
### (continued)

Page

*Geo Grp., Inc. v. Newsom*
  50 F.4th 745 (9th Cir. 2022)........................................................................................... 14

*Hewitt v. Joyner*
  940 F.2d 1561 (9th Cir. 1991)........................................................................................... 8

*Hoechst Celanese Corp. v. Franchise Tax Bd.*
  25 Cal. 4th 508 (2001) ...................................................................................................... 9

*Huron Portland Cement Co. v. Detroit*
  362 U.S. 440 (1960).......................................................................................................... 18

*In re Kirkland*
  915 F.2d 1236 (9th Cir. 1990)........................................................................................... 8

*Kobzoff v. L.A. Cnty. Harbor/UCLA Med. Ctr.*
  19 Cal. 4th 851 (1998) ...................................................................................................... 9

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*
  416 F.3d 940 (9th Cir. 2005)............................................................................................. 7

*Los Angeles Cnty. Bar Ass'n v. Eu*
  979 F.2d 697 (9th Cir. 1992)............................................................................................. 20

*Maya v. Centex Corp.*
  658 F.3d 1060 (9th Cir. 2011)........................................................................................... 7

*Mitcheson v. Harris*
  955 F.2d 235 (4th Cir. 1992)............................................................................................. 9

*Molsbergen v. United States*
  757 F.2d 1016 (9th Cir. 1985)........................................................................................... 8

*N. Star Int'l v. Ariz. Corp. Comm'n*
  720 F.2d 578 (9th Cir. 1983)............................................................................................. 7

*Nat'l Fed. of the Blind v. United Airlines Inc.*
  813 F.3d 718 (9th Cir. 2016)....................................................................................... 17, 18

*Novoa v. GEO Grp., Inc.*
  No. EDCV 17-2514 JGB (SHKx), 2022 WL 2189626 (C.D. Cal. Jan. 25,
  2022) .......................................................................................................................... 14, 15

*Nwauzor v. GEO Grp., Inc.*
  No. C17-5769RJB, 2020 WL 1689728 (W.D. Wash. Apr. 7, 2020) ..................................... 15

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Okpalobi v. Foster*
  244 F.3d 405 (5th Cir. 2001) (en banc)....................................................................... 20

*Owino v. CoreCivic, Inc.*
  No. 17-CV-1112 JLS (NLS), 2018 WL 2193644 (S.D. Cal. May 14, 2018) ......................... 16

*Pacific Legal Found. v. Unemployment Ins. Appeals Bd.*
  29 Cal. 3d 101 (1981) ....................................................................................................... 9

*Papasan v. Allain*
  478 U.S. 265 (1986).......................................................................................................... 19

*Pennhurst State Sch. & Hosp. v. Halderman*
  465 U.S. 89 (1984)............................................................................................................ 19

*Ruiz v. Sylva*
  102 Cal. App. 4th 199 (2002)........................................................................................ 9, 11

*Safer Chemicals, Healthy Families v. U.S. E.P.A.*
  943 F.3d 397 (9th Cir. 2019) ............................................................................................ 12

*Spokeo, Inc. v. Robins*
  578 U.S. 330 (2016) .......................................................................................................... 12

*Stoianoff v. Montana*
  695 F.2d 1214 (9th Cir. 1983)........................................................................................... 12

*Summit Med. Assocs. P.C. v. Pryor*
  180 F.3d 1326 (11th Cir. 1999)......................................................................................... 20

*Susan B. Anthony List v. Driehaus*
  573 U.S. 149 (2014) .......................................................................................................... 13

*United States v. California*
  921 F.3d 865 (9th Cir. 2019)......................................................................................*passim*

*United States v. Neal*
  776 F.3d 645 (9th Cir. 2015)............................................................................................... 8

*United States v. Ritchie*
  342 F.3d 903 (9th Cir. 2003)......................................................................................... 7, 16

*Warren v. Fox Family Worldwide, Inc.*
  328 F.3d 1136 (9th Cir. 2003).......................................................................................... 7, 8

# TABLE OF AUTHORITIES
### (continued)

Page

*West Pico Furniture Co. v. Pacific Fin. Loans*
  2 Cal. 3d 594 (1970) ................................................................................ 9

*Western Mining Council v. Watt*
  643 F.2d 618 (9th Cir. 1981) ................................................................... 12

*Ex parte Young*
  209 U.S. 123 (1908) ............................................................................ 19, 20

*Younger v. Harris*
  401 U.S. 37 (1971) .................................................................................. 12

*Zucco Partners, LLC v. Digimarc Corp.*
  552 F.3d 981 (9th Cir. 2009) ..................................................................... 7

STATUTES

California Government Code
  § 7320(b)(2) ............................................................................................ 5
  § 12532(a) ............................................................................................... 2
  § 12532(b) ............................................................................................... 2
  § 12532(b)(1)(A)-(B) ........................................................................... 2, 10
  § 12532(b)(2) ........................................................................................... 3
  § 12532(c) ............................................................................................... 3

California Health & Safety Code
  § 101045 ............................................................................................ 1, 10
  § 101045 ................................................................................................. 4
  § 101045(a) ............................................................................................. 5
  § 101045(a)-(b) ...................................................................................... 10
  § 101045(c) ........................................................................................ 6, 10

California Statutes 2024, Chapter 183 .................................................... 4, 6

CONSTITUTIONAL PROVISIONS

California Constitution, Article V § 1 ..................................................... 19

United States Constitution, Eleventh Amendment ............................... 19, 20

COURT RULES

Federal Rule of Civil Procedure
  12(b)(1) ............................................................................................. 7, 13
  12(b)(6) ............................................................................... 7, 16, 19, 20

**INTRODUCTION**

The California Legislature enacted Senate Bill ("SB") 1132 in the wake of the COVID-19 pandemic, during which Californians—both staff and detainees—at private detention facilities suffered from outbreaks of the virus that threatened to "not only affect the lives of those detained but also impacts the surrounding communities." Strong Decl., Ex. A, S. Floor Analysis, S.B. 1132, at 3 (Apr. 24, 2024) (noting that "an outbreak at Otay Mesa Detention Facility resulted in more than 300 staff and detained individuals becoming infected").[1]  In response to this public health crisis, the Legislature enacted SB 1132 to clarify that local health officials may inspect private detention facilities, thereby increasing transparency into the conditions under which people are detained in California communities. *Id.*

Plaintiff GEO's complaint is based on a fundamental misinterpretation of SB 1132.  GEO, which operates private detention facilities pursuant to a contract with the United States Immigration and Customs Enforcement ("ICE"), contends that California Health & Safety Code section 101045, as amended by SB 1132, imposes certain minimum detention standards on its facilities.  On this basis, GEO alleges that SB 1132 conflicts with federal law.  But GEO offers no support for its reading of SB 1132—because there is none.  SB 1132's plain text and legislative history make clear that the law merely clarifies that local health officers may enter and inspect private detention facilities.  On its face, SB 1132 imposes no new standards on private detention facilities and contains no mechanism for local jurisdictions or the State to enforce any particular detention standards on them.

GEO cannot base a claim on a speculative, unsupported, and inaccurate interpretation of the challenged law.  When properly interpreted, SB 1132 can support no plausible claim, and GEO's complaint should be dismissed for at least three reasons.  First, GEO lacks standing because it fails to allege it will suffer any injury as a result of the inspections SB 1132 authorizes, and the injuries it does allege—based on its misreading of the law—are speculative.  Second, GEO fails to state a plausible claim for relief under either the intergovernmental immunity doctrine or

---

[1] All legislative reports cited herein are attached to State Defendants' Request for Judicial Notice and the accompanying Declaration of Meghan H. Strong ("Strong Decl.") and are also available at https://tinyurl.com/45rjabv5.

1    federal preemption.  In *United States v. California*, 921 F.3d 865 (9th Cir. 2019), the Ninth

2    Circuit upheld a substantively similar law that granted the Attorney General the authority to

3    inspect private detention facilities.  In doing so, the court held that the challenged law did not

4    violate intergovernmental immunity and was not preempted.  *Id.* at 882-86.  That SB 1132

5    extends inspection authority to local health officers does not change the analysis.  Because *United*

6    *States v. California* disposes of GEO's claims as a matter of law, they should be dismissed.  And

7    third, even if GEO could otherwise state a plausible claim challenging SB 1132 (and they cannot),

8    sovereign immunity bars GEO's claims as to Governor Newsom.

9    The Court should grant State Defendants' Motion to Dismiss and dismiss this action in its

10    entirety, with prejudice.[2]

11    **BACKGROUND**

12    **I.    THE ATTORNEY GENERAL'S ABILITY TO INSPECT DETENTION FACILITIES**
     **AUTHORIZED BY AB 103**

13

14    In 2017, the California Legislature passed, and the Governor signed, AB 103, which

15    requires the Attorney General or his designee to "engage in reviews of county, local, or private

16    locked detention facilities in which noncitizens are being housed or detained for purposes of civil

17    immigration proceedings in California."  Cal. Gov't Code § 12532(a).  The law requires

18    inspection of any "private locked detention facility in which an accompanied or unaccompanied

19    minor is housed or detained on behalf of, or pursuant to a contract with, the federal Office of

20    Refugee Resettlement or the United States Immigration and Customs Enforcement."  *Id.*

21    § 12532(b).  The law further provides the Attorney General with guidance on what is to be

22    reviewed and states that the review should include a "review of the conditions of confinement"

23    and "of the standard of care and due process provided to the individuals" detained in the facility.

24    *Id.* § 12532(b)(1)(A)-(B).  To facilitate this review, the Attorney General "shall be provided all

25    necessary access for the observations necessary to effectuate review required pursuant to this

26    _____

27    [2] As explained in State Defendants' concurrently filed opposition to GEO's motion for
    preliminary injunction, the Court should deny GEO's motion for similar reasons.  State
    Defendants' arguments in opposition to the motion for preliminary injunction are incorporated by
28    reference herein.

2

1    section." *Id.* § 12532(c).  And after completing the review, the Attorney General is required to

2    provide the Legislature and the Governor "with a comprehensive report outlining the findings of

3    the review." *Id.* § 12532(b)(2).

4        The previous federal administration challenged AB 103, asserting claims substantively

5    similar to those GEO brings here and claiming AB 103 (and two other statutes) was preempted by

6    federal law and violated the Supremacy Clause.  *California*, 921 F.3d at 876.  The district court

7    denied the federal government's motion for a preliminary injunction as to AB 103.  *Id.* at 877.

8    On appeal, recognizing that "California retains an historic—and, since the federal government's

9    contracts with immigration detainee facilities explicitly contemplate the application of state

10   regulations, undisputed—authority to regulate the conditions of detainees housed within its

11   borders," the Ninth Circuit largely upheld AB 103.  *Id.* at 882-86, 894.

12       The court first noted that "[p]rior to the enactment of AB 103, California law already

13   required periodic inspections of prisons and detainment facilities," and that "[o]nly those

14   provisions [of AB 103] that impose an additional economic burden *exclusively* on the federal

15   government are invalid under the doctrine of intergovernmental immunity."  *Id.* at 882, 884

16   (emphasis added).  To the extent AB 103 merely "duplicate[d] inspection requires otherwise

17   mandated under California law," the court concluded it likely did not violate the doctrine of

18   intergovernmental immunity as to the reviews of the "conditions of confinement" and "standard

19   of care and due process" in ICE facilities.  *Id.* at 873, 884-85.[3]

20       The Ninth Circuit also rejected the federal government's claim that AB 103 was preempted

21   by federal law.  *Id.* at 885-86.  The court found that in contrast to cases that "evinced states'

22   active frustration of the federal government's ability to discharge its operation," "AB 103 does

23   not regulate whether or where an immigration detainee may be confined, require that federal

24   detention decisions or removal proceedings conform to state law, or mandate that ICE contractors

25

26       [3] The only portion of AB 103 that the Ninth Circuit found was likely unconstitutional was
     a subsection requiring "review of the circumstances around [the detainees'] apprehension and
27   transfer to the facility," which the court found was a unique burden placed only on federal
     facilities and therefore violated the intergovernmental immunity doctrine's bar on discrimination
28   against the federal government.  *California*, 921 F.3d at 882-85.  SB 1132 contains no similar
     provision and, as discussed *infra*, is generally applicable to State, local, and federal facilities.

1    obtain a state license." *Id.* at 885.  Rather, AB 103 merely required "some federal action to

2    permit inspections and produce data," and "[m]ere collection of such factual data does not (and

3    cannot) disturb any federal arrest or detention decision." *Id.*  The court found that "California

4    possesses the general authority to ensure the health and welfare of inmates and detainees in

5    facilities within its borders, and neither the provisions of the INA that permit the federal

6    government to contract with states and localities for detention purposes, nor the contracts

7    themselves, demonstrate *any* intent, let alone 'clear and manifest,' that Congress intended to

8    supersede this authority." *Id.* at 886 (internal citations omitted).  On this basis, the Ninth Circuit

9    concluded that AB 103 was not preempted by federal law.

10   **II.    CALIFORNIA'S EXTENSION OF INSPECTION AUTHORITY TO LOCAL HEALTH
11           OFFICERS VIA SB 1132**

12       SB 1132 was introduced in the California Legislature in early 2024 to "clarif[y] that

13   'private detention facilities,' as defined under existing law, are subject to inspection by local

14   health officers."  Strong Decl., Ex. A, S. Floor Analysis, S.B. 1132, at 1 (Apr. 24, 2024).  During

15   the COVID-19 pandemic, "there was confusion about the role state and local health authorities

16   play within federal detention facilities, which lead [sic] to problems with COVID testing and

17   vaccine distribution." *Id.* at 4.  SB 1132 aimed to resolve that confusion and "to ensure that

18   county health officials have the ability to enter these facilities when necessary." *Id.* at 7.  The bill

19   recognized that existing law already required a local health officer to annually investigate health

20   and sanitary conditions in local and state facilities and extended that authorization to allow "a

21   county or city health officer to investigate a private detention facility, as defined, as they

22   determine necessary."  Cal. Stats. 2024, ch. 183 (Legislative Counsel's Digest to SB 1132).[4]

23       The Legislature passed SB 1132, and the Governor signed the bill into law on August 19,

24   2024.  The law takes effect on January 1, 2025.  The bill repeals and replaces California Health

25   and Safety Code 101045 to read as follows:

26

27   _____

28       [4] The text of SB 1132, including the Legislative Counsel's Digest, is available at
     https://tinyurl.com/5jcxk9j5.

(a) The county health officer shall, at least annually, investigate health and sanitary conditions in a county jail, publicly operated detention facility in the county, and private work furlough facility and program established pursuant to Section 1208 of the Penal Code. A private work furlough facility and program shall pay an annual fee to the county health officer commensurate with the annual cost of those investigations, as determined by the county health officer. The county health officer may make additional investigations of a county jail, private detention facility, or other detention facility of the county as they determine necessary. The county health officer shall submit a report to the Board of State and Community Corrections, the sheriff or other person in charge of the jail or detention facility, and to the board of supervisors. In a city having a health officer, the city health officer shall, at least annually, investigate health and sanitary conditions in a city jail and other detention facility. The city health officer may make additional investigations of a city jail, private detention facility, or other detention facility as they determine necessary. The city health officer shall submit a report to the Board of State and Community Corrections, the person in charge of the jail or detention facility, and to the city governing body.

(b) Whenever requested by the sheriff, the chief of police, local legislative body, or the Board of State and Community Corrections, but not more often than twice annually, the county health officer or, in cities having a city health officer, the city health officer, shall investigate health and sanitary conditions in a jail or detention facility described in this section, and submit a report to each of the officers and agencies authorized in this section to request the investigation and to the Board of State and Community Corrections.

(c) The investigating officer shall determine if the food, clothing, and bedding is of sufficient quantity and quality that at least shall equal minimum standards and requirements prescribed by the Board of State and Community Corrections for the feeding, clothing, and care of prisoners in local jails and detention facilities, and if the sanitation requirements required by Article 1 (commencing with Section 114250) of Chapter 8 of Part 7 of Division 104 for restaurants have been maintained.

(d) For purposes of this section, "private detention facility" has the same meaning as in Section 7320 of the Government Code.

California Government Code section 7320(b)(2) defines "private detention facility" as "a detention facility that is operated by a private, nongovernment, for-profit entity pursuant to a contract or agreement with a governmental entity." The bill's impact on private detention facilities is limited. While the law requires local health officers to investigate State and local facilities "at least annually," no such annual requirement applies to private facilities. Cal. Health & Safety Code § 101045(a). Rather, the law leaves investigations of private detention facilities to the officers' discretion, "as they determine necessary." *Id.*

5

As stated in SB 1132, the new law simply "authorize[s] a county or city health officer to investigate a private detention facility, as defined, as they determine necessary."  Cal. Stats. 2024, ch. 183 (Legislative Counsel's Digest to SB 1132).  Like AB 103 before it, SB 1132 offers guidance on what to investigate, stating that local health officers should "determine if the food, clothing, and bedding is of sufficient quantity and quality that it at least shall equal minimum standards and requirements prescribed by the Board of State and Community Corrections for the feeding, clothing, and care of prisoners in local jails and detention facilities."  Cal. Health & Safety Code § 101045(c).  But the bill does not affirmatively require any facility to comply with these standards, nor does it provide any enforcement mechanism if the investigating officer determines that conditions are not equal to a minimum standard.  In short, SB 1132 authorizes officers to inspect and report.

### III.  GEO'S LAWSUIT

Two months after the Governor signed SB 1132 into law, GEO filed this action challenging SB 1132's constitutionality as applied to GEO's operations of federal immigration facilities on behalf of ICE.  Dkt. 1 at ¶¶ 75, 90.  GEO sues Gavin Newsom, in his official capacity as the Governor of California; Rob Bonta, in his official capacity as the Attorney General of California; and Kristopher Lyon, in his official capacity as the Health Officer for Kern County (the county in which the facilities GEO contends are "primarily affected" by SB 1132 are located).  *Id.* ¶¶ 17-19.  GEO broadly alleges that SB 1132 seeks to directly control federal immigration operations by replacing the federal detention standards with California's own standards.  *Id.* ¶ 9.  GEO brings three causes of action:  (1) Violation of Intergovernmental Immunity (Direct Regulation); (2) Federal Preemption (Field Preemption); and (3) Federal Preemption (Obstacle Preemption).  *Id.* ¶¶ 69-97.  GEO seeks a court order declaring SB 1132 unconstitutional and enjoining Defendants from enforcing SB 1132 against GEO.  *Id.* at 24 (Prayer for Relief).

A month after filing its complaint, GEO filed a Motion for Preliminary Injunction.  Dkt. 19. The parties negotiated a coordinated briefing and hearing schedule for that motion and this Motion to Dismiss, and the two motions will be heard together.  Dkt. 23.

1

## LEGAL STANDARD

2   A complaint must be dismissed under Rule 12(b)(1) if the plaintiff lacks Article III standing

3   to bring suit. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). The purpose of a

4   motion to dismiss under Rule 12(b)(6), meanwhile, is to test the legal sufficiency of the

5   complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal

6   can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged

7   under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

8   1988). To defeat a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim

9   to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); the

10  plaintiff must allege facts that consist of "more than a sheer possibility that a defendant has acted

11  unlawfully," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To state a plausible claim for relief, the

12  plaintiff must allege "more than labels and conclusions, and a formulaic recitation of the elements

13  of a cause of action will not do." *Twombly*, 550 U.S. at 555. Instead, the plaintiff must allege

14  facts sufficient to "raise a right to relief above the speculative level." *Id.*

15  Though a court must accept all factual allegations as true, it need not accept conclusory

16  allegations nor assume the truth of legal conclusions cast in the form of factual allegations.

17  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). While a court

18  generally cannot consider materials outside the complaint, a document "may be incorporated by

19  reference into the complaint if the plaintiff refers extensively to the document or the document

20  forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.

21  2003). A court may also consider documents that are proper subjects of judicial notice. *Zucco*

22  *Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009). A court may dismiss a

23  complaint pursuant to Rule 12(b)(6) without leave to amend if "it is clear that the complaint could

24  not be saved by any amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d

25  940, 946 (9th Cir. 2005).

26

27

28

**ARGUMENT**

**I.    SB 1132 IS AN INSPECTION-ONLY STATUTE THAT DOES NOT IMPOSE ANY COMPLIANCE STANDARDS ON PRIVATE DETENTION FACILITIES**

GEO's complaint is premised on GEO's assertion that SB 1132 seeks "to directly control the federal immigration operations of ICE and its contractors, and replace the uniform federal detention standards."  Dkt. 1 at ¶ 9; Dkt. 19 at 10.  But SB 1132 does no such thing.  The law's plain language, as confirmed by its legislative history, makes clear that, as applied to private detention facilities like GEO's, SB 1132 simply authorizes local health officers to enter and inspect the conditions of the facility.  While the Court must accept as true GEO's factual allegations, it need not accept GEO's conclusions of law or unsupported inferences, including its misreading of SB 1132.  *Warren*, 328 F.3d at 1139.  The Court can and should independently evaluate the language of SB 1132 and determine whether GEO has stated a plausible claim based on SB 1132's actual effect.

"The preeminent canon of statutory interpretation requires [courts] to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.'  Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous."  *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992)).  Courts "must interpret [the] statut[e] as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous."  *United States v. Neal*, 776 F.3d 645, 652 (9th Cir. 2015) (alterations in original) (quoting *Boise Cascade Corp. v. U.S. E.P.A.*, 942 F.2d 1427, 1432 (9th Cir. 1991)).

"When interpreting state law, a federal court is bound by the decision of the highest state court."  *In re Kirkland*, 915 F.2d 1236, 1238 (9th Cir. 1990) (citation omitted); *see also Hewitt v. Joyner*, 940 F.2d 1561, 1565 (9th Cir. 1991).  And "[w]hen the state supreme court has not spoken on an issue, [a federal court] must determine what result the [state supreme] court would reach based on state appellate court opinions, statutes and treatises."  *Hewitt*, 940 F.2d at 1565; *Kirkland*, 915 F.2d at 1239; *Molsbergen v. United States*, 757 F.2d 1016, 1020 (9th Cir. 1985).

8

1    When state law is unclear, "[a]bsent a strong countervailing federal interest, the federal court

2    should not elbow its way into [the] controversy to render what may be an 'uncertain' and

3    'ephemeral' interpretation of state law." *Mitcheson v. Harris*, 955 F.2d 235, 238 (4th Cir. 1992).

4         Under California law, "[s]tatutory construction is a matter of law for the courts." *Pacific*

5    *Legal Found. v. Unemployment Ins. Appeals Bd.*, 29 Cal. 3d 101, 111 (1981) (citing *Carmona v.*

6    *Div. of Indus. Safety*, 13 Cal. 3d 303, 310 (1975)).  The fundamental task in statutory

7    interpretation "is to determine the Legislature's intent so as to effectuate the law's purpose."

8    *Coal. of Concerned Cmty., Inc. v. City of Los Angeles*, 34 Cal. 4th 733, 737 (2004).  Like federal

9    courts, California courts "first examine the statutory language, giving it a plain and commonsense

10   meaning." *Id*.  "The statute's plain meaning controls the court's interpretation unless its words

11   are ambiguous.  If the plain language of a statute is unambiguous, no court need, or should, go

12   beyond that pure expression of legislative intent." *Kobzoff v. L.A. Cnty. Harbor/UCLA Med. Ctr.*,

13   19 Cal. 4th 851, 861 (1998).  "In interpreting particular words, phrases or clauses in a statute, it is

14   a cardinal rule that the entire substance of the statute or that portion relating to the subject under

15   review should be examined in order to determine the scope and purpose of the provision

16   containing such words, phrases or clauses.  The words in question must be construed in context,

17   keeping in mind the nature and obvious purpose of the statute." *West Pico Furniture Co. v.*

18   *Pacific Fin. Loans*, 2 Cal. 3d 594, 608 (1970) (citation omitted).

19        Further, a court "may not, under the guise of construction, rewrite the law or give the words

20   an effect different from the plain and direct import of the terms used . . . .  It is [the court's] task

21   to construe, not to amend, the statute." *Cal. Fed. Savings & Loan Ass'n v. City of Los Angeles*,

22   11 Cal. 4th 342, 349 (1995).  And statutes should not be interpreted to render any of their

23   language superfluous. *Ruiz v. Sylva*, 102 Cal. App. 4th 199, 209 (2002).  "If, however, the

24   language is susceptible to more than one reasonable interpretation, then [courts] look to 'extrinsic

25   aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative

26   history, public policy, contemporaneous administrative construction, and the statutory scheme of

27   which the statute is a part.'" *Hoechst Celanese Corp. v. Franchise Tax Bd.*, 25 Cal. 4th 508, 519

28   (2001) (quoting *People v. Woodhead*, 43 Cal. 3d 1002, 1008 (1987)).

9

1     This Court's analysis of SB 1132 must begin, then, with its plain text.  The text of

2   California Health & Safety Code section 101045(c), as amended by SB 1132 and on which GEO

3   relies, states:  "The investigating officer shall determine if the food, clothing, and bedding is of

4   sufficient quantity and quality that at least shall equal minimum standards and requirements

5   prescribed by the Board of State and Community Corrections for the feeding, clothing, and care

6   of prisoners in local jails and detention facilities."  This plain text does not, as GEO suggests,

7   affirmatively require private detention facilities to comply with standards prescribed by the Board

8   of State and Community Corrections (the "State Board").  Rather, the statute provides the

9   investigating officer with guidance regarding what conditions—namely food, clothing, and

10   bedding—to inspect under section 101045 and identifies standards to which the officer shall

11   compare those conditions.  But neither section (c) nor any other part of SB 1132 affirmatively

12   states that a private detention facility must comply with these standards.  And critically, if an

13   investigating officer concludes that conditions in a private detention facility do not meet a given

14   standard, SB 1132 provides no mechanism to impose those standards on the facility or other form

15   of recourse.  The investigating officer is tasked with entering and inspecting the facility, as the

16   officer deems necessary, and reporting on the conditions found there.  Cal. Health & Safety Code

17   § 101045(a)-(b).  The officer may conclude in the resulting report that conditions in a given

18   private facility are not in line with the state standards that would be required of local facilities.

19   But the plain text of SB 1132 does not require private detention facilities to abide by the State

20   Board's standards, and it provides no means to impose those standards on them.

21     In this manner, the challenged law is similar to AB 103, which provided the Attorney

22   General with guidance on what is to be reviewed during an inspection.  *Compare* Cal. Gov't Code

23   § 12532(b)(1)(A)-(B) (providing that review should include a "review of the conditions of

24   confinement" and "of the standard of care and due process provided to the individuals" detained

25   in the facility), *with* Cal. Health & Safety Code § 101045(c) (providing that "[t]he investigating

26   officer shall determine if the food, clothing, and bedding is of sufficient quantity and quality that

27   at least shall equal minimum standards and requirements prescribed by the Board of State and

28   Community Corrections for the feeding, clothing, and care of prisoners in local jails and detention

10

1  facilities").  Both laws require a state officer to inspect detainees' living conditions and submit

2  reports on those conditions, but neither imposes any compliance standards on the facilities, nor

3  provides any enforcement mechanism for compelling a facility to comply with any particular

4  standard.

5      To the extent the Court finds ambiguity in SB 1132's plain text, it may look to legislative

6  history, which confirms this reading.  *Ruiz*, 102 Cal. App. 4th at 209.  The Senate and Assembly

7  reports on SB 1132 each summarize SB 1132 as having a single, narrow purpose:  to "clarify that

8  'private detention facilities,' are subject to inspection by local health officers."  Strong Decl., Ex.

9  B, S. Comm. on Public Safety, S.B. 1132, at 2 (Apr. 23, 2024); *see also* Strong Decl., Ex. C, S.

10  Committee on Health, S.B. 1132, at 1 (Cal. Apr. 3, 2024); Strong Decl., Ex. D, Assemb. Comm.

11  on Health, S.B. 1132, at 1 (Cal. June 4, 2024); Strong Decl., Ex. E, Assemb. Comm. on Public

12  Safety, S.B. 1132, at 1 (July 2, 2024).  None of the legislative reports mentions imposing state

13  minimum standards on private detention facilities, nor do they contemplate SB 1132 having any

14  enforcement mechanism to compel private detention facilities to comply with those standards.  In

15  fact, the Legislature affirmatively acknowledged that local health officers "have no enforcement

16  duties."  Strong Decl., Ex. A, S. Floor Analysis, S.B. 1132, at 5 (Apr. 24, 2024).

17      The Court should reject GEO's misreading of SB 1132, which is supported by no analysis

18  in either its complaint or preliminary injunction motion.  And the Court should analyze each of

19  GEO's challenges to SB 1132 based on the actual scope and impact of the law, not an alleged

20  impact that GEO has contrived.[5]

21  **II.    GEO LACKS STANDING**

22      Where there is a motion to dismiss for lack of standing, a plaintiff must establish as an

23  "irreducible constitutional minimum" that it has "(1) suffered an injury in fact, (2) that is fairly

24  ―――――――――――――――

25      [5] State Defendants assert that SB 1132's meaning is clear on its plain text and as
   confirmed by its legislative history.  If, however, the Court believes the law is susceptible to
26  GEO's interpretation, the Court should abstain from adjudicating GEO's claims until the
   California courts have passed on this interpretation question.  *Babbitt v. United Farm Workers*
27  *Nat'l Union*, 442 U.S. 289, 305-06 (1979) (abstention is appropriate "where the challenged state
   statute is susceptible of a construction by the state judiciary that would avoid or modify the
28  necessity of reaching a federal constitutional question." (quoting *Kusper v. Pontikes*, 414 U.S. 51,
   54 (1973))).

1    traceable to the challenged conduct of the defendant, and (3) that it is likely to be redressed by a

2    favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v.*

3    *Defs. of Wildlife*, 504 U.S. 555, 560 (1992)); *see also Safer Chemicals, Healthy Families v. U.S.*

4    *E.P.A.*, 943 F.3d 397, 410 (9th Cir. 2019).

5         To establish an "injury in fact," a plaintiff must have suffered "an invasion of a legally

6    protected interest which is (a) concrete and particularized, and (b) actual or imminent, not

7    conjectural or hypothetical." *Clark v. City of Seattle*, 899 F.3d 802, 809 (9th Cir. 2018) (quoting

8    *Lujan*, 504 U.S. at 560) (internal quotation marks omitted).  For an injury to be concrete, it must

9    "'actually exist[]'; in other words, it is 'real, and not abstract.'" *Bassett v. ABM Parking Servs.,*

10   *Inc.*, 883 F.3d 776, 779 (9th Cir. 2018) (quoting *Spokeo*, 578 U.S. at 340).  And the plaintiff

11   "must be subject to a genuine threat of imminent prosecution." *Safer Chemicals, Healthy*

12   *Families*, 943 F.3d at 414 (citation omitted).  If a plaintiff cannot show that a law's enforcement

13   against it is either "likely" or even "remotely possible," the plaintiff cannot meet Article III's

14   requirements. *Younger v. Harris*, 401 U.S. 37, 42 (1971).  In that regard, the "[t]he mere

15   existence of a statute, which may or may not ever be applied to plaintiffs, is not sufficient to

16   create a case or controversy within the meaning of Article III." *Stoianoff v. Montana*, 695 F.2d

17   1214, 1223 (9th Cir. 1983) (citation omitted); *see also Western Mining Council v. Watt*, 643 F.2d

18   618, 627 (9th Cir. 1981).

19        GEO lacks standing to bring its claims because it has not alleged a real, concrete injury or a

20   credible threat of imminent enforcement.  The only "injury" GEO alleges is based on conflicts it

21   perceives between federal and state detention standards, but because SB 1132 does not in fact

22   impose such standards (*see supra* at pp. 7-11), this is no injury at all.  Put differently, GEO's

23   alleged "injury" is entirely speculative because it is based on a misreading of the challenged law.

24   As to SB 1132's actual impact, GEO does not allege that it has or will suffer any injury from

25   mere inspection.  Indeed, GEO has not even alleged that any county health officer has indicated

26   an intent to initiate an inspection under SB 1132 once it takes effect.  Though GEO references a

27   message by an unnamed California county inspector—who GEO does not allege was employed

28   by the County Defendant here—that message simply alerts GEO of SB 1132's passage and

1   suggests that GEO consider how the bill will affect it.  Dkt. 1 at ¶ 67.  GEO does not allege that

2   the unnamed inspector, or any other inspector, has actually threatened to enforce SB 1132 against

3   it.

4        At most, GEO's allegations amount to a pre-enforcement claim, but GEO does not allege a

5   sufficient pre-enforcement injury.  *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-59

6   (2014).  To establish a pre-enforcement injury-in-fact, a plaintiff must allege (1) "an intention to

7   engage in a course of conduct arguably affected with a constitutional interest" that (2) is

8   "proscribed by a statute" and (3) "there exists a credible threat of prosecution thereunder."  *Id.* at

9   159 (quoting *Babbitt*, 442 U.S. at 298).  GEO meets none of these requirements.  Certainly, these

10  factors are not met as to GEO's theoretical injury based on its misreading of SB 1132 because

11  there is no credible threat the State will prosecute GEO based on an interpretation of the statue the

12  State itself disavows.  But even as to a potential pre-enforcement injury related to the eventual

13  inspection of GEO's facilities under SB 1132, GEO does not allege an injury.  First, GEO has not

14  alleged that it intends to engage in any course of conduct related to SB 1132.  Second, GEO has

15  similarly not alleged that SB 1132 proscribes any of its activities.  And third, GEO has not alleged

16  that there is a credible threat that the State will prosecute it under SB 1132.  At base, GEO has not

17  alleged in relation to SB 1132 that "Defendants have communicated a specific warning or threat

18  to initiate proceedings against them" or "identified any history of prior enforcement of the

19  provisions they challenge—against them or anyone else."  *Dwinnell, LLC v. McCullough*, No.

20  2:23-CV-10029-SB-KS, 2024 WL 3009300, at *5 (C.D. Cal. May 17, 2024).  "[A]llegations

21  about hypothetical applications of law are not suggestive of a genuine threat of imminent

22  prosecution."  *Id.*  Thus, without more, GEO has failed to allege an injury that is actual and

23  imminent, and its claims must therefore be dismissed for lack of standing under Federal Rule of

24  Civil Procedure 12(b)(1).

25  **III.    GEO FAILS TO STATE A PLAUSIBLE CLAIM**

26       GEO brings three claims against all Defendants:  (1) Violation of Intergovernmental

27  Immunity (Direct Regulation); (2) Federal Preemption (Field Preemption); and (3) Federal

28  Preemption (Obstacle Preemption).  Dkt. 1 at ¶¶ 69-97.  Each of GEO's claims relies on its

13

1   fundamental misreading of SB 1132, and GEO fails to state a plausible claim as a result.  When

2   properly interpreted, it is clear as a matter of law that SB 1132 does not violate the

3   intergovernmental immunity doctrine, nor is it preempted by federal law.

4       **A.    SB 1132 Does Not Violate the Intergovernmental Immunity Doctrine**

5           Under the doctrine of intergovernmental immunity, state laws are constitutional unless they

6   "regulate[] the United States directly or discriminate[] against the Federal Government or those

7   with whom it deals."  *California*, 921 F.3d at 878 (quoting *Boeing Co. v. Movassaghi*, 768 F.3d

8   832, 839 (9th Cir. 2014)).  GEO's claim in this case is based on a theory of direct regulation only;

9   it does not allege that SB 1132 is discriminatory.  Dkt. 1 at ¶¶ 69-75.  GEO alleges that SB 1132

10  "prescribe[s] operational requirements regarding numerous aspects of federal private detention

11  facilities" and thereby "substantially interferes with federal government operations and places

12  immediate burdens on the performance of federal functions."  *Id.* ¶ 72.  But SB 1132 does none of

13  these things.  Instead, it merely grants local health officers the authority to inspect GEO's facility.

14  *See supra* at pp. 7-11.  To state a plausible claim, GEO must allege that SB 1132's grant of

15  inspection authority violates the intergovernmental immunity doctrine.  It cannot do so.

16          To begin, because GEO is a private entity contracting with the federal government, as

17  opposed to the federal government itself, it bears noting that "[t]he scope of a federal contractor's

18  protection from state law under the Supremacy Clause is substantially narrower than that of a

19  federal employee or other federal instrumentality."  *Geo Grp., Inc. v. Newsom*, 50 F.4th 745, 755

20  (9th Cir. 2022).  The Supremacy Clause "leaves considerable room for states to enforce their

21  generally applicable laws against federal contractors" and "courts distinguish regulations that

22  merely increase the federal government's costs from those that would control its operations."  *Id.*

23          It is therefore not enough for GEO to allege that SB 1132 increases its (and, indirectly, the

24  federal government's) operating costs.  "Rather, GEO must show that it serves as an

25  'instrumentality so closely connected to the Government that the two cannot realistically be

26  viewed as separate entities, at least insofar as the activity being [regulated] is concerned.'"  *Novoa*

27  *v. GEO Grp., Inc.*, No. EDCV 17-2514 JGB (SHKx), 2022 WL 2189626, at *22 (C.D. Cal. Jan.

28  25, 2022) (quoting *United States v. Mexico*, 455 U.S. 720, 735 (1982)) (alteration in original); *see*

14

1    *also id.* ("[T]he mere fact that non-discriminatory taxation or regulation of the contractor

2    imposes an increased economic burden on the government is no[t] . . . regarded as bringing the

3    contractor within any implied immunity of the government from state taxation or regulation."

4    (quoting *Penn Dairies v. Milk Control Comm'n of Penn.*, 318 U.S. 261, 269 (1943))).

5           Against this backdrop, courts have repeatedly held that the fact that GEO performs work for

6    the federal government does not entitle it to a categorical exemption from complying with state

7    law within its facilities.  *Nwauzor v. GEO Grp., Inc.*, No. C17-5769RJB, 2020 WL 1689728, at

8    *8 (W.D. Wash. Apr. 7, 2020) (rejecting GEO's assertion that "because it runs a federal

9    immigration detention center it should be 'treated the same as the federal government itself for

10    purposes of intergovernmental immunity'" and noting that "GEO's claim would mean that no

11    State or local laws would apply to it, contrary to the provisions in its contract with ICE"); *Novoa*,

12    2022 WL 2189626, at *22 (rejecting GEO's contention that it is "an instrumentality of the

13    Federal Government" and finding that California's minimum wage law did not directly regulate

14    the federal government to the extent it applied to GEO).  In fact, GEO's contracts with the federal

15    government *require* such compliance.  *Nwauzor*, 2020 WL 1689728, at *1 (noting that"[t]he

16    contracts also require GEO to comply with all federal, state, and local laws and regulations" and

17    that, "[i]f ambiguity arises, the most stringent standard applies"); *Novoa*, 2022 WL 2189626, at

18    *20 ("ICE further requires GEO to comply with 'all applicable laws and regulations' in operating

19    Adelanto.").

20           The operative question, then, is whether SB 1132 seeks to control the federal government's

21    operations through GEO.  GEO cannot plausibly allege that it does.  As discussed above, SB 1132

22    merely authorizes county and city health officers to enter and inspect private detention facilities.

23    GEO fails to allege any burden on its operations imposed by this simple inspection requirement

24    for there is none.  The Ninth Circuit upheld similar inspection authority as to the Attorney

25    General in *United States v. California*, finding that AB 103 did not violate intergovernmental

26    immunity to the extent it simply extended preexisting inspection requirements imposed on state

27    and local detention facilities to federal ones.  921 F.3d at 882-85.  SB 1132's inspection authority

28    is no more burdensome simply because it runs to county health officers rather than the Attorney

1    General.  Indeed, GEO is *already* subject to this inspection requirement because it agreed in its

2    contract with ICE to "participate in responding to all requests for information and inspection or

3    review findings by regulatory agencies."  Dkt. 19-1 at 45.[6]

4        Because *United States v. California* establishes that the inspection authority that SB 1132

5    grants does not violate intergovernmental immunity, GEO cannot state a plausible claim based on

6    that doctrine.  Its first cause of action should therefore be dismissed.

7        **B.    SB 1132 Is Not Preempted by Federal Law**

8        Both of GEO's preemption claims fail under Rule 12(b)(6) for the same basic reason that

9    they rely on GEO's misreading of SB 1132.  Federal law on immigration detention standards does

10   not preempt SB 1132 because SB 1132 does not impose any detention standards.  GEO does not

11   offer any argument as to how federal law could preempt SB 1132's inspection authority

12   provision, and there is none to make because *United States v. California* is dispositive on this

13   issue.  921 F.3d at 885-86 (rejecting preemption challenge to Attorney General inspection

14   statute).  In any event, even if SB 1132 did impose standards on detention conditions, GEO

15   cannot show the required "clear and manifest intent" to preempt state law on this issue because

16   GEO's own contract with ICE directs it to follow state law and how to proceed if state and federal

17   law appear to conflict.  *Id.* at 885.  GEO cannot state a plausible preemption claim as to SB 1132.

18       **1.    Field Preemption**

19       First, any preemption analysis should consider only SB 1132's actual impact.  GEO cannot

20   show SB 1132 is preempted simply by claiming it touches on the broad field of immigration in

21   general and claiming that its broadly drawn field is preempted.  *See Owino v. CoreCivic, Inc.*, No.

22   17-CV-1112 JLS (NLS), 2018 WL 2193644, at *18 (S.D. Cal. May 14, 2018) ("[I]f this Court

23   were to find that Congress preempted California law in the entire field of civil immigration

24   detention then California could not enforce state and local ordinances, including building codes,

25

26       [6] Though GEO attached its ICE contract only to its Motion for Preliminary Injunction and
     not to its complaint, the Court may nonetheless consider the contract on State Defendants' Motion
27   to Dismiss because the contract forms part of the basis for GEO's claims and GEO relies on and
     quotes from the contract throughout its complaint, *e.g.* Dkt. 1 at ¶¶ 62-64, thereby incorporating
28   the contract by reference.  *Ritchie*, 342 F.3d at 908.

1    sanitation requirements, and other licensing strictures . . . The Court finds that the INA does not

2    regulate the entire field of detention conditions within an immigration detention facility."); *Chao*

3    *Chen v. Geo Grp., Inc.*, 287 F. Supp. 3d 1158, 1165-66 (W.D. Wash. 2017) (rejecting GEO's

4    argument that Congress "intends to regulate the field of immigration detention generally,

5    including detainee wages" and finding that when considering "the pertinent area of regulation is

6    detainee wages," Congress did not intend to preempt the field).  Rather, GEO's field preemption

7    challenge must be evaluated based on a carefully delineated field that covers only the regulated

8    area.  *Nat'l Fed. of the Blind v. United Airlines Inc.*, 813 F.3d 718, 734 (9th Cir. 2016) (noting

9    that the Ninth Circuit has "emphasized the importance of delineating the pertinent area of

10    regulation with specificity before proceeding with the field preemption inquiry" (citing *Martin v.*

11    *Midwest Express Holdings, Inc.*, 555 F.3d 806, 811 (9th Cir. 2009))).  SB 1132 regulates the

12    more limited field of health and safety inspections of immigration detention facilities located

13    within the state.  This is not an area in which Congress has occupied the field.

14        In conducting a preemption analysis, "courts should assume that the historic police powers

15    of the States' are not superseded unless that was the clear and manifest purpose of Congress."

16    *California*, 921 F.3d at 885-86 (quoting *Arizona v. United States*, 567 U.S. 387, 400 (2012)

17    (internal quotation marks omitted)).  In *United States v. California*, the Ninth Circuit recognized

18    that "California possesses the general authority to ensure the health and welfare of inmates and

19    detainees in facilities within its borders, and neither the provisions of the [Immigration and

20    Nationality Act] that permit the federal government to contract with states and localities for

21    detention purposes, nor the contracts themselves, demonstrate *any* intent, let alone 'clear and

22    manifest,' that Congress intended to supersede this authority."  *Id.* at 886 (internal citation

23    omitted).  On this basis, the court concluded that AB 103's grant of authority to the Attorney

24    General to inspect private detention facilities was not preempted by federal law.  *Id.*  The same

25    reasoning applies here.

26        That Congress did not intend to occupy the field of immigration detention facility

27    inspections is further confirmed by GEO's contract with ICE.  That contract requires GEO to

28    respond to "all requests for information and inspection or review findings by regulatory

agencies." Dkt. 19-1 at 45. The ICE contract thus does not "evidence a desire to occupy a field completely," and there is therefore no field preemption. *See Nat'l Fed. of the Blind*, 813 F.3d at 733 (explaining that "where Congress has entrusted an agency with the task of promulgating regulations to carry out the purposes of a statute, as part of the preemption analysis we must consider whether the regulations evidence a desire to occupy a field completely." (quoting *Montalvo v. Spirit Airlines*, 508 F.3d 464, 470-71 (9th Cir. 2007))).

### 2. Obstacle Preemption

Next, GEO's theory of obstacle preemption is no more viable because the only "obstacles" it alleges are once again rooted in its misinterpretation of SB 1132. SB 1132 does not make California's detention standards an obstacle to federal immigration detention standards because SB 1132 does not impose California's detention standards. Meanwhile, GEO alleges no obstacle posed by SB 1132's grant of inspection authority, and there is none. SB 1132 "does not regulate whether or where an immigration detainee may be confined, require that federal detention decision or removal proceedings conform to state law, or mandate that ICE contractors obtain a state license." *California*, 921 F.3d at 885. At most, it "might require some federal action to permit inspections and produce data" but "[m]ere collection of such factual data does not (and cannot) disturb any federal arrest or detention decision." *Id.* SB 1132 poses no greater obstacle to federal immigration detention than did AB 103. It is not preempted by federal law.

Finally, and in the alternative, even if the Court concludes that SB 1132 does affirmatively impose compliance standards on detention conditions on GEO, the law is still not preempted.[7] GEO's own contract defeats this argument. Far from indicating a "clear and manifest intent,"

---

[7] The Court has "a duty to accept the reading that disfavors pre-emption" and should construe SB 1132 narrowly to "avoid doubtful constitutional questions," to the extent any exist. *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005); *Fox v. Washington*, 236 U.S. 273, 277 (1915); *see also Huron Portland Cement Co. v. Detroit*, 362 U.S. 440, 446 (1960) ("To hold otherwise would be to ignore the teaching of this Court's decisions which enjoin seeking out conflicts between state and federal regulation where none clearly exists"). The Court should proceed with particular caution where, as here, the challenged law is newly passed, creating "uncertainty about what the law means and how it will be enforced." *Arizona*, 567 U.S. at 415. "At this stage, without the benefit of a definitive interpretation from the state courts, it would be inappropriate to assume [the challenged law] will be construed in a way that creates a conflict with federal law." *Id.*

18

1  GEO's contract with ICE *requires* GEO to "comply with all applicable ICE, federal, state and

2  local laws, statutes, regulations, and codes." Dkt. 19-1 at 88. It even informs GEO how to

3  resolve potential conflicts between federal law: "In the event there is more than one reference to

4  a safety, health, or environmental requirement . . . the most stringent requirement shall apply."

5  *Id.* Not only did Congress not intend to displace state law in this field, but it ensured no conflict

6  between state and federal law would arise in the first place by giving ICE the authority to avoid

7  such conflicts through the language of its contracts.

8      GEO's federal preemption claims should be dismissed under Federal Rule of Civil

9  Procedure 12(b)(6).

10  **IV.    SOVEREIGN IMMUNITY BARS GEO'S CLAIMS AGAINST GOVERNOR NEWSOM**

11      Finally, GEO named Governor Newsom as a Defendant in his official capacity, alleging

12  that he has "[t]he supreme executive power" of the State and is charged with "see[ing] that the

13  law is faithfully executed." Dkt. 1 at ¶ 17 (quoting Cal. Const. art. V, § 1). The Governor has

14  immunity from such claims without exception and should be dismissed from this litigation.

15      The Eleventh Amendment to the United States Constitution provides, in relevant part, that

16  "[t]he judicial power of the United States shall not be construed to extend to any suit in law or

17  equity, commenced or prosecuted against one of the United States by Citizens of another State."

18  It thus prohibits suit against a State or its instrumentalities for legal or equitable relief, including

19  declaratory relief, in the absence of consent by the State or an abrogation of that immunity by

20  Congress. *Papasan v. Allain*, 478 U.S. 265, 276-77 (1986); *Pennhurst State Sch. & Hosp. v.*

21  *Halderman*, 465 U.S. 89, 100-01 (1984). "[A]s when the State itself is named as the defendant, a

22  suit against state officials that is in fact a suit against a State is barred regardless of whether it

23  seeks damages or injunctive relief." *Pennhurst*, 465 U.S. at 101-02 (citation omitted).

24      The Supreme Court has recognized a limited exception to Eleventh Amendment sovereign

25  immunity in *Ex parte Young*, 209 U.S. 123 (1908), which permits actions for prospective

26  declaratory or injunctive relief against state officers sued in their official capacities for their

27  alleged violations of federal law. For the *Ex parte Young* exception to apply, however, the state

28  official sued must have direct responsibility for enforcement of an allegedly unconstitutional

1   statute. *Okpalobi v. Foster*, 244 F.3d 405, 416-17 (5th Cir. 2001) (en banc); *Summit Med. Assocs.*

2   *P.C. v. Pryor*, 180 F.3d 1326, 1341-42 (11th Cir. 1999).  A "generalized duty to enforce state

3   law" is insufficient.  *Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992).

4       Here, GEO names Governor Newsom, generally, in his official capacity, alleging only that

5   he "has responsibility for enforcing SB-1132" merely because he has a general duty to supervise

6   executive officers.  Dkt. 1 at ¶ 17.  The Eleventh Amendment bars all these claims and causes of

7   action.  *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th

8   Cir. 2013) (Governor entitled to Eleventh Amendment immunity when only connection to

9   challenged statute was a general duty to enforce state law).

10      Under the Eleventh Amendment, Governor Newsom is immune from the claims and causes

11  of action alleged by Plaintiff.  GEO has not pleaded and could not plead facts establishing the

12  Governor's *direct* role in enforcing SB 1132 such that he could be made a defendant under the *Ex*

13  *parte Young* exception.  Even if GEO could otherwise state a claim challenging SB 1132,

14  Governor Newsom should be dismissed from this litigation under Federal Rule of Civil Procedure

15  12(b)(6).

16                                    **CONCLUSION**

17      For the foregoing reasons, and those set forth in State Defendants' concurrently filed brief

18  opposing GEO's request for a preliminary injunction, the Court should grant State Defendants'

19  Motion to Dismiss and dismiss GEO's complaint.  Because no amendment could cure the defects

20  in GEO's complaint, dismissal should be granted without leave to amend.

21

22

23

24

25

26

27

28

1    Dated:  December 20, 2024                    Respectfully submitted,

2                                                ROB BONTA
                                                 Attorney General of California
3                                                JOHN D. ECHEVERRIA
                                                 Supervising Deputy Attorney General
4                                                MARIA F. BUXTON
                                                 JAY RUSSELL
5                                                Deputy Attorneys General

6

7

8                                                */s/ Meghan H. Strong*
                                                 MEGHAN H. STRONG
9                                                Deputy Attorney General
                                                 *Attorneys for Defendants California*
10                                               *Governor Gavin Newsom and California*
                                                 *Attorney General Rob Bonta*
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

State Defendants' Motion to Dismiss Complaint (2:24-cv-2924)

# CERTIFICATE OF SERVICE

Case Name:     ***The Geo Group, Inc. v. Gavin C.***     Case No.     **2:24-cv-2924-DAD-CSK**
               ***Newsom, et al.***

I hereby certify that on <u>December 20, 2024</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

- **STATE DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

- **STATE DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS; DECLARATION OF MEGHAN H. STRONG**

- **STATE DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>December 20, 2024</u>, at San Francisco, California.

|  |  |
|---|---|
| C. Tobin | */s/ C Tobin* |
| Declarant | Signature |

SA2024304839