UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

THE GEO GROUP, INC.,

Plaintiff,

v.

GAVIN C. NEWSOM, et al.,

Defendants.

No. 2:24-cv-02924-DAD-CSK

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

(Doc. Nos. 19, 24)

This matter came before the court on March 3, 2025 for a hearing on plaintiff's motion for preliminary injunction filed on November 20, 2024 (Doc. No. 19) and the motion to dismiss plaintiff's complaint filed on behalf of defendants Gavin C. Newsom and Rob Bonta (collectively, "the State defendants") on December 20, 2024 (Doc. No. 24).[1] (Doc. No. 32.) Attorneys Scott Schipma and Nicole Phillis appeared by video on behalf of plaintiff, Deputy Attorney General Meghan Strong appeared by video on behalf of the State defendants, and Deputy Kern County Counsel Jeremy McNutt appeared by video on behalf of defendant Kristopher Lyon. (*Id.*) For the reasons explained below, the State defendants' motion to dismiss will be granted, with leave to amend also being granted, and plaintiff's motion for preliminary injunction will be denied.

[1] Defendant Dr. Kristopher Lyon, the Kern County Health Officer, filed a notice of joinder in the State defendants' motion to dismiss on December 20, 2024. (Doc. No. 26.)

**BACKGROUND**

Plaintiff filed its complaint initiating this action on October 22, 2024, alleging that California Health and Safety Code § 101045 imposes standards and requirements on privately-run immigration detention facilities in violation of the intergovernmental immunity, field preemption, and obstacle preemption doctrines. (Doc. No. 1.)

In its complaint, plaintiff alleges in relevant part as follows. Plaintiff is a corporation that provides contracted secure residential immigration services to U.S. Immigration and Customs Enforcement ("ICE") at several locations in California. (*Id.* at ¶¶ 16, 62.) Defendant Gavin C. Newsom is the governor of the state of California. (*Id.* at ¶ 17.) Defendant Rob Bonta is the attorney general of the state of California. (*Id.* at ¶ 18.) Defendant Dr. Kristopher Lyon is the health officer for Kern County. (*Id.* at ¶ 19.)

California enacted a statute authorizing the California Attorney General to inspect the conditions of private immigration detention facilities within California ("AB-103"). (*Id.* at ¶ 8.) The Ninth Circuit struck down other parts of AB-103 as violating the intergovernmental immunity doctrine, but the Ninth Circuit upheld the provisions that did not regulate confinement or impose mandates on the federal contractors and that instead merely required access to the facilities for inspections. (*Id.*) (citing *United States v. California*, 921 F.3d 865 (9th Cir. 2019)). Unsatisfied with the inspections authorized by AB-103, California amended Health and Safety Code § 101045 "to directly control the federal immigration operations of ICE and its contractors, and replace the uniform federal detention standards authorized and specifically implemented at the direction of Congress with California's enforcement of its own labyrinthine [sic] of often-conflicting state standards." (*Id.* at ¶ 9.)

/////

/////

/////

/////

/////

/////

Section 101045 provides in relevant part:

> (a) The county health officer shall, at least annually, investigate health and sanitary conditions in a county jail, publicly operated detention facility in the county, and private work furlough facility and program established pursuant to Section 1208 of the Penal Code. . . . The county health officer may make additional investigations of a county jail, private detention facility, or other detention facility of the county as they determine necessary. The county health officer shall submit a report to the Board of State and Community Corrections, the sheriff or other person in charge of the jail or detention facility, and to the board of supervisors. In a city having a health officer, the city health officer shall, at least annually, investigate health and sanitary conditions in a city jail and other detention facility. The city health officer may make additional investigations of a city jail, private detention facility, or other detention facility as they determine necessary. The city health officer shall submit a report to the Board of State and Community Corrections, the person in charge of the jail or detention facility, and to the city governing body.
>
> (b) Whenever requested by the sheriff, the chief of police, local legislative body, or the Board of State and Community Corrections, but not more often than twice annually, the county health officer or, in cities having a city health officer, the city health officer, shall investigate health and sanitary conditions in a jail or detention facility described in this section, and submit a report to each of the officers and agencies authorized in this section to request the investigation and to the Board of State and Community Corrections.
>
> (c) The investigating officer shall determine if the food, clothing, and bedding is of sufficient quantity and quality that at least shall equal minimum standards and requirements prescribed by the Board of State and Community Corrections for the feeding, clothing, and care of prisoners in local jails and detention facilities, and if the sanitation requirements required by Article 1 (commencing with Section 114250) of Chapter 8 of Part 7 of Division 104 for restaurants have been maintained.

(*Id.* at ¶ 22); Cal. Health & Safety Code § 101045. The "minimum standards and requirements prescribed by the Board of State and Community Corrections" mentioned in § 101045(c) are lengthy, detailed, and often inconsistent with corresponding federal standards. (*See* Doc. No. 1 at ¶¶ 24–47.)

On August 13, 2024, a California county inspector sent plaintiff a message noting that the newly amended § 101045 contemplates the county inspector "inspecting detention facility [sic] including inspection frequency and areas that need to be inspected." (*Id.* at ¶ 67.) This message advised plaintiff that the county inspector "may need to see the housing portion of the facility,"

and advised plaintiff that it should consider how § 101045 "will affect your facilit[ies]." (*Id.* at ¶ 67) (alterations in original).

Based on the foregoing allegations, plaintiff asserts three claims against all the named defendants: (1) Section 101045 violates the intergovernmental immunity doctrine; (2) section 101045 violates the field preemption doctrine; and (3) section 101045 violates the obstacle preemption doctrine.

Plaintiff filed its motion for preliminary injunction on November 20, 2024. (Doc. No. 19.) On December 20, 2024, the State defendants filed their motion to dismiss and their opposition to plaintiff's motion for preliminary injunction. (Doc. Nos. 24, 25.) Defendant Dr. Kristopher Lyon filed his notice of joinder in the State defendants' motion to dismiss that same day. (Doc. No. 26.) On January 24, 2025, plaintiff filed its opposition to the pending motion to dismiss and its reply in support of its motion for preliminary injunction. (Doc. Nos. 27, 28.) On February 7, 2025, the State defendants filed their reply in support of their motion to dismiss. (Doc. No. 31.)

## LEGAL STANDARD

### A. Motion to Dismiss Pursuant to Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) permits a party to "challenge a federal court's jurisdiction over the subject matter of the complaint." *Nat'l Photo Grp. v. Allvoices, Inc.*, No. 13-cv-03627-JSC, 2014 WL 280391, at *1 (N.D. Cal. Jan. 24, 2014). "A Rule 12(b)(1) jurisdictional attack may be facial or factual. In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (internal citation omitted). Here, the State defendants do not contest the veracity of plaintiff's factual allegations. Instead, the State defendants contend that plaintiff lacks standing due to plaintiff's misinterpretation of § 101045. (*See* Doc. No. 24 at 19–21.) The State defendants therefore mount a facial attack to plaintiff's standing.

"The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter

to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

**B. Motion for a Preliminary Injunction**

"The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011)) ("After *Winter*, 'plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction.'") (quoting *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)). "In the Ninth Circuit, a plaintiff may also obtain a preliminary injunction by showing 'serious questions go[ ] to the merits' of its claims and a balance of hardships that tips 'sharply' towards the plaintiff, so long as it makes a showing on the other two factors." *A Woman's Friend Pregnancy Res. Clinic v. Becerra*, 901 F.3d 1166, 1167 (9th Cir. 2018) (citation omitted) (alterations in original). The party seeking the injunction bears the burden of proof as to each of these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009); *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief."). Finally, an injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

/////

/////

/////

/////

/////

**ANALYSIS**

**A. The State Defendants' Motion to Dismiss**

The court must first consider whether plaintiff has alleged standing for its claims.[2] The court concludes below that plaintiff has failed to adequately allege its standing to challenge the imposition of state standards under § 101045 because § 101045 simply does not impose any such standards. Therefore, the court does not reach the question of whether § 101045, as misconstrued by plaintiff, violates the intergovernmental or preemption doctrines.

1. Whether Plaintiff Has Alleged Standing

The State defendants argue that plaintiff has failed to allege pre-enforcement standing because plaintiff's argument underlying each of its claims brought in this action, namely that § 101045 imposes standards and requirements rather than simply permitting investigations, is wrong. (Doc. No. 24 at 21.) Consequently, according to the State defendants, plaintiff has failed to allege that it intends to engage in a course of conduct related to the statute, that its conduct will be proscribed by the statute, or that there is a credible threat of prosecution under the challenged statute. (*Id.*) In opposition, plaintiff argues that § 101045 imposes standards and requirements on private detention facilities. (Doc. No. 27 at 7–8.) Plaintiff further argues that the mere inspection of its facilities is costly and that it faces a credible threat of enforcement, though it advances this argument without citation to any supporting allegations in its complaint. (*Id.* at 8.) In reply, the State defendants contend that plaintiff did not include any allegations in its complaint that would support standing on the basis of the inspections. (Doc. No. 31 at 11.) At the March 3, 2025 hearing on the pending motions, counsel for the State defendants reiterated the position that plaintiff is attempting to generate standing via a "clearly erroneous" interpretation of § 101045.

Pre-enforcement standing has three elements: (1) an intention to engage in a course of conduct arguably affected with a constitutional interest; (2) intended future conduct that is arguably proscribed by the challenged statute; and (3) a substantial threat of future enforcement. *Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 487 (9th Cir. 2024) (citing *Susan B. Anthony List v.*

---

[2] The court notes that its analysis is the same as to each of plaintiff's claims because plaintiff's standing for each claim depends on its proposed interpretation of § 101045.

*Driehaus*, 573 U.S. 149, 161–64 (2014)). A plaintiff must allege each of these elements in order to survive a motion to dismiss. *Id.*

*a. Conduct Arguably Affected with Constitutional Interest*

To determine if a plaintiff's intended course of conduct is arguably affected with a constitutional interest (i.e., entitled to constitutional protection)[3], the court is not required "to engage in a mini litigation of the claims. Rather, 'the Supreme Court has cautioned that standing "in no way depends on the merits" and has instructed [courts] to take as true all material allegations in the complaint and construe the complaint in favor of the plaintiff.'" *Id.* at 488. Because plaintiff has failed to allege the second and third elements of pre-enforcement standing, and because defendants' motion to dismiss must be granted on that basis alone, the court will assume for the purposes of the pending motion that plaintiff has sufficiently alleged a course of conduct arguably affected with a constitutional interest. *See, e.g.*, *Dwinell, LLC v. McCullough*, No. 23-cv-10029-SB-KS, 2024 WL 3009300, at *4 n.4 (C.D. Cal. May 17, 2024) ("The Court assumes without deciding that Plaintiffs have satisfied the first two prongs of the *Driehaus* standard.").

*b. Conduct Arguably Proscribed by Statute*

Plaintiff has not sufficiently alleged the second *Driehaus* factor, i.e., intended future conduct that is arguably proscribed by the statute. A plaintiff's conduct is "arguably proscribed" by a statute if the plaintiff's interpretation of that statute is "reasonable enough." *See Wolford v. Lopez*, 116 F.4th 959, 992 (9th Cir. 2024) ("Plaintiffs' interpretation is a reasonable one, so the statute 'arguably' proscribes their conduct."); *see also id.* at 979 n.1, 991 (stating that the Second Circuit's decision in *Antonyuk v. Chiumento*, 89 F.4th 271 (2d Cir. 2023), *vacated sub nom. Antonyuk v. James*, __U.S.__, 144 S. Ct. 2709 (2024) "retains its persuasive worth" and approvingly citing its discussion of standing); *Antonyuk*, 89 F.4th at 337 ("Thus, 'if a plaintiff's interpretation of a statute is reasonable enough[,] and under that interpretation, the plaintiff may

---

[3] *See Animal Legal Def. Fund v. Vaught*, 8 F.4th 714, 718 (8th Cir. 2021) ("This conduct is arguably affected with a constitutional interest, because the creation and dissemination of information are speech within the meaning of the First Amendment.") (internal quotation marks omitted).

legitimately fear that it will face enforcement of the statute, then the plaintiff has standing to challenge the statute.'") (alterations in original) (quoting *Picard v. Magliano*, 42 F.4th 89, 98 (2d Cir. 2022)).

The allegations of plaintiff's complaint solely address its intent not to renovate its facilities to comply with various state and local standards and requirements allegedly imposed by § 101045.[4] (*See generally* Doc. No. 1.) But compliance with § 101045 does not even arguably require such conduct on the part of plaintiff.

"When interpreting state law, a federal court is bound by the decision of the highest state court." *In re Kirkland*, 915 F.2d 1236, 1238 (9th Cir. 1990). "In the absence of such a decision, a federal court must predict how the highest state court would decide the issue . . . ." *Id.* at 1239; *see also T-Mobile USA Inc. v. Selective Ins. Co. of Am.*, 908 F.3d 581, 586 (9th Cir. 2018). "If the [statutory] language is clear, courts must generally follow its plain meaning . . . ." *Busker v. Wabtec Corp.*, 11 Cal. 5th 1147, 1157 (2021).

The challenged statute provides in relevant part that local or county health officers "shall investigate health and sanitary conditions in a jail or detention facility described in this section, and submit a report to" various state agencies. Cal. Health & Safety Code § 101045(b). The next subsection provides that the investigating officer "shall determine if the food, clothing, and

---

[4] In a single paragraph in its opposition to defendants' motion to dismiss, plaintiff points to evidence submitted in connection with its motion for preliminary injunction—not allegations appearing in its complaint—that plaintiff argues demonstrates actual injury resulting from the inspections authorized by § 101045. (Doc. No. 27 at 8) (citing Doc. No. 19-4). However, plaintiff clearly does not challenge the inspections as being unlawful in its complaint. In fact, in its complaint, plaintiff expressly distinguished its claims from those brought challenging a different statute that "*[did] not impose standards on the conditions of facilities*" and "[did] not regulate confinement . . . *but merely required access for inspections[.]*" (Doc. No. 1 at ¶ 8.) Presumably, this is because the Ninth Circuit has previously held that a state statute authorizing inspections of private immigration detention facilities—similar in many relevant respects, in the court's view, to § 101045 here—did not violate the intergovernmental immunity or preemption doctrines. *See California*, 921 F.3d at 884–86. In any event, plaintiff provides no argument as to how alleged injuries sustained from conduct that is expressly not challenged in its complaint—i.e., § 101045's authorization of inspections—can provide it with standing to seek an injunction enjoining entirely different conduct—i.e., the purported obligation to conform the conditions of detention facilities to state standards. *Cf. Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) ("[P]laintiff must demonstrate constitutional standing separately for each form of relief requested.").

bedding is of sufficient quantity and quality that at least shall equal minimum standards and requirements prescribed by the Board of State and Community Corrections for the feeding, clothing, and care of prisoners in local jails and detention facilities . . . ." *Id.* § 101045(c). Looking at the plain language of these subsections, it is clear that subsection (b) directs investigators to compile reports and that subsection (c) provides for the contents of those reports. That is, investigators shall first determine if the facility conditions at least equal certain standards, and then they shall document those determinations in their reports. Any language supporting plaintiff's proposed interpretation—specifically, that subsection (c) somehow imposes the aforementioned standards and requirements on private immigration detention facilities—is absent from the statutory text. Notably, plaintiff's sole argument in its opposition regarding the actual statutory text consists simply of highlighting and italicizing certain portions of the statute and then flatly asserting that its interpretation of the statute is correct without any further explanation.[5] (*See* Doc. No. 27 at 12–13.) Simply contradicting the unambiguous statutory language without argument is not a "reasonable enough" interpretation.

The court therefore concludes that plaintiff has not alleged intended future conduct that is arguably proscribed by statute. *See, e.g.*, *Christian Healthcare Ctrs., Inc. v. Nessel*, 117 F.4th 826, 846 (6th Cir. 2024) (finding that certain aspects of the plaintiff's conduct—namely, making oral statements—was "not arguably proscribed by" the challenged provision where the statutory text could "only be reasonably read" to proscribe written communications).

/////

/////

---

[5] In support of its proposed interpretation, plaintiff advances two other arguments not arising from the statutory text. First, plaintiff points to one purportedly ambiguous statement in the legislative history. (*See* Doc. No. 27 at 15.) When the court noted at the March 3, 2025 hearing that it had no reason to consider legislative history where, as here, the statutory text here is unambiguous, plaintiff's counsel replied only that he "would be happy to receive a decision from [the court] that there is no enforcement mechanism under" § 101045. Second, plaintiff argues that other provisions of the California Health and Safety Code permit state and local officials to enforce health and safety regulations. (Doc. No. 27 at 14–15.) However, as the State defendants correctly point out in reply, (a) plaintiff does not challenge those provisions, and (b) even if those provisions permit enforcement of standards imposed by other Health and Safety Code sections, § 101045 still does not impose such standards in the first place. (Doc. No. 31 at 9.)

c. *Substantial Threat of Enforcement*

Plaintiff must allege the substantial threat of future enforcement. *Peace Ranch*, 93 F.4th at 489. "This final prong often rises or falls with the enforcing authority's willingness to disavow enforcement." *Id.* at 490.

Here, the State defendants have expressly stated in their pending motion to dismiss—a motion in which defendant Dr. Kristopher Lyon filed a notice of joinder—that they "disavow[ed]" any reading of § 101045 that suggests that the statute imposes state standards and requirements on plaintiff's private immigration detention facilities. (*See* Doc. No. 24 at 21.) Counsel for the State defendants reaffirmed this position at the March 3, 2025 hearing. Notably, plaintiff's complaint does not contain any allegations that any defendant has attempted to, or threatened to, impose or enforce any state standards pursuant to § 101045. Nor does plaintiff address defendants' disavowal of plaintiff's proposed interpretation of the statute in its opposition. (*See* Doc. No. 27 at 8.)

Consequently, and particularly in light of the statutory text inarguably not imposing any standards on plaintiff in these circumstances as discussed above, the court concludes that plaintiff has failed to allege a substantial threat of enforcement. *See Lopez v. Candaele*, 630 F.3d 775, 791 (9th Cir. 2010) ("[T]he inapplicability of the plain language of the sexual harassment policy to Lopez's speech, and the absence of any official interpretation of the policy as applying to Lopez's speech, cut against the credible threat of enforcement."); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 894 F.3d 1030, 1045 (9th Cir. 2018) ("Moreover, Fleshman's arguments that the EPA or any state would enforce a SIP against him for continuing to drive his car are entirely speculative. There are no plausible allegations, nor reason to believe from the record, that the EPA or any state will attempt to subject operators of unmodified Volkswagen vehicles to liability.") (citing *Candaele*, 630 F.3d at 788); *Nat'l Shooting Sports Found. v. Lopez*, 730 F. Supp. 3d 1073, 1088 (D. Haw. 2024) ("[T]he Attorney General made a key concession that has persuaded the Court to find that standing is lacking here. . . . [A]t the hearing on NSSF's motion, the Attorney General committed to interpreting the phrase 'to harm . . . another' as excluding lawful self-defense and as referring only to unlawful harm."); *compare Candaele*, 630

F.3d at 788 ("Likewise, we have held that plaintiffs did not demonstrate the necessary injury in fact where the enforcing authority expressly interpreted the challenged law as not applying to the plaintiffs' activities."), *with Peace Ranch*, 93 F.4th at 490 ("[A]t oral argument, the Attorney General's counsel was asked, 'Are you able to commit that the state won't enforce the law against Peach Ranch . . . ?' Tellingly, she replied, 'No.'").

Plaintiff has failed to sufficiently allege standing as to all of its claims because it has failed to allege intended future conduct arguably proscribed by statute and, separately, because it has failed to allege a substantial threat of future enforcement. Accordingly, the State defendants' motion to dismiss, in which defendant Dr. Kristopher Lyon filed a notice of joinder, will be granted.

2. Leave to Amend

Leave to amend should be granted "freely" when justice so requires. Fed. R. Civ. P. 15(a). The Ninth Circuit maintains a policy of "extreme liberality generally in favoring amendments to pleadings." *Rosenberg Bros. & Co. v. Arnold*, 283 F.2d 406, 406 (9th Cir. 1960). Reasons "such as undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies . . . undue prejudice to the opposing party . . . [or] futility" may support denial of leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Plaintiff did not state whether it sought leave to amend its complaint in its opposition to defendants' motion to dismiss. However, a district court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Servs.*, 911 F.2d 242, 247 (9th Cir. 1990). Here, while the court is skeptical that plaintiff can amend its pleading to sufficiently allege standing, it cannot be certain that plaintiff will be unable to do so. For instance, plaintiff may wish to clarify whether it seeks to enjoin the inspections authorized by § 101045. Plaintiff will therefore be granted leave to amend its complaint. However, plaintiff is cautioned that any first amended complaint it may elect to file

/////

/////

should address all of the deficiencies pointed out by the State defendants in their motion to dismiss.[6]

**B. Plaintiff's Motion for Preliminary Injunction**

In its motion for preliminary injunction, plaintiff seeks to enjoin the enforcement of § 101045 on the grounds that the statute "seeks to replace federal detention standards in that contract with often conflicting and inconsistent state minimum standards and requirements" in violation of the intergovernmental immunity, field preemption, and obstacle preemption doctrines. (Doc. No. 19 at 2.) The parties' arguments regarding plaintiff's motion for preliminary injunction essentially mirror those advanced in connection with the State defendants' motion to dismiss.

In particular, the State defendants again argue that plaintiff lacks standing to enjoin defendants from enforcing state standards pursuant to § 101045. (Doc. No. 25 at 30.) The State

---

[6] For instance, plaintiff's briefing largely fails to address the critical distinction between the federal government and private contractors. Plaintiff also argues that the Ninth Circuit's decision in *Geo Group, Inc. v. Newsom*, 50 F.4th 745 (9th Cir. 2022), addressing a California law prohibiting the federal government from operating private detention facilities in California, is somehow more applicable to this action than the Ninth Circuit's decision in *United States v. California*, 921 F.3d 865 (9th Cir. 2019), which addressed a state statute authorizing inspections of private immigration detention facilities. Plaintiff should also be prepared to address why the Ninth Circuit's recent decision in *Nwauzor v. GEO Group, Inc.*, 127 F.4th 750 (9th Cir. 2025), where the court had before it contracts between plaintiff and the federal government that are virtually identical in certain respects to some of the contracts relevant to this action, is not on point. At the March 3, 2025 hearing, plaintiff's counsel argued only that the Ninth Circuit's decision in *Nwauzor* was wrongly decided and that a petition for rehearing *en banc* has been filed in that case. Neither contention is persuasive. *See In re Zermeno-Gomez*, 868 F.3d 1048, 1053 (9th Cir. 2017) ("[A] published decision that has not been modified or withdrawn is binding on lower courts within the circuit. . . . [A] published decision constitutes binding authority and must be followed unless and until it is overruled by a body competent to do so."); *Aguilera-Cubitt v. AG Seal Beach, LLC*, No. 22-cv-00249-JVS-JDE, 2022 WL 1171028, at *5 (C.D. Cal. Apr. 20, 2022) (rejecting the defendant's argument "that the [Ninth Circuit's] decision in *Saldana* is not binding on this Court because a mandate has not yet issued and there is a pending petition for rehearing en banc"); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1047 n.4 (N.D. Cal. Aug. 31, 2018) ("The Ninth Circuit's docket, however, reveals only a pending motion for panel rehearing and rehearing en banc . . . . Under these circumstances, *J.E.F.M.* remains as law of the circuit which this court is bound to follow."); *see also Cox v. Dep't of Just.*, 111 F.4th 198, 201 (2nd Cir. 2024) ("We join our sister circuits in holding that a published opinion becomes binding precedent when it is decided, regardless of whether the mandate has issued or of any pending petitions for rehearing or for writ of certiorari. It remains so until it is vacated or overruled.").

defendants note that "[a]t this preliminary injunction stage, [a plaintiff] 'must make a clear showing of each element of standing,'" *Yazzie v. Hobbs*, 977 F.3d 964, 966 (9th Cir. 2020). (*Id.*) They argue that plaintiff has failed to do so for the same reasons discussed in the pending motion to dismiss. (*Id.*) Plaintiff does not respond directly to this argument in its reply. However, in addressing irreparable harm in its reply, plaintiff argues that it faces an imminent threat of enforcement for the reasons discussed in its opposition to the State defendants' motion to dismiss. (Doc. No. 28 at 19.)

The court must first consider the State defendants' argument that plaintiff lacks standing before considering the merits of plaintiff's motion. *See Yazzie*, 977 F.3d at 966 ("Because standing is a threshold issue, we consider whether Yazzie has 'demonstrate[d] standing . . . for [the] form of relief that is sought.'") (alterations and omissions in original). The court concludes that plaintiff has failed to meet its burden to demonstrate standing for the same reasons discussed above in connection with the State defendants' motion to dismiss. Specifically, plaintiff cannot show intended future conduct arguably proscribed by the challenged statute because § 101045 inarguably does not impose standards and requirements on plaintiff's private immigration detention facilities. Plaintiff's motion for a preliminary injunction must be denied for this reason alone.

Additionally, plaintiff has failed to present any evidence of a substantial threat that any defendant will enforce California standards on plaintiff pursuant to § 101045. Plaintiff submitted a declaration from James Janeka, its regional vice president, in connection with its opposition to the pending motion to dismiss. (*See* Doc. No. 19-4.) Plaintiff argues that this declaration is evidence that a different county health official may seek to inspect plaintiff's facilities. (*See id.* at 2; Doc. No. 27 at 8.) But plaintiff does not argue—nor does the court find—that the declaration provides support for a finding that the defendants named in this action may seek to enforce plaintiff's compliance with California standards and requirements pursuant to § 101045. (*See* Doc. Nos. 19-4 at 2; 27 at 8.) Moreover, plaintiff again fails to address defendants' explicit disavowal of plaintiff's proposed interpretation of § 101045.

/////

Accordingly, plaintiff's motion for preliminary injunction will be denied for lack of standing. *See Nat'l Shooting Sports Found.*, 730 F. Supp. 3d at 1091 ("NSSF has not met its burden of establishing standing. For that reason, the motion for preliminary injunction is denied.").[7]

**CONCLUSION**

For the reasons discussed above:

1. The motion to dismiss plaintiff's complaint filed by defendants Gavin C. Newsom and Rob Bonta (Doc. No. 24), in which defendant Dr. Kristopher Lyon filed a notice of joinder (Doc. No. 26), is GRANTED, with leave to amend;

2. Plaintiff's motion for preliminary injunction (Doc. No. 19) is DENIED; and

/////

/////

/////

---

[7] In its reply in support of its motion for preliminary injunction, plaintiff at times suggests that it is also seeking to enjoin the inspections authorized by § 101045. (*See* Doc. No. 28 at 9–10, 13, 15–19.) A "district court need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). Additionally, "there must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 637 (9th Cir. 2015). Plaintiff does not explain how its complaint, which includes allegations expressly distinguishing another state statute that "did not regulate confinement or impose mandates on the ICE contractors, but *merely required access* for inspections" (Doc. No. 1 at ¶ 8), can be construed as challenging the inspections authorized by § 101045. Moreover, even assuming for the sake of argument that plaintiff could do so, plaintiff's motion would then be denied on the merits. Plaintiff has clearly not met its burden of showing that § 101045 "impermissibly interfere[s] with federal functions by overriding federal contracting decisions" rather than "merely increas[ing] the federal government's costs" in violation of the intergovernmental immunity doctrine. *Geo Grp.*, 50 F.4th at 760; *see also Nwauzor*, 127 F.4th at 762 (finding no violation of the intergovernmental immunity doctrine where there was "nothing—either in federal law or in GEO's contract with the federal government—that prevents GEO from" complying with the challenged state law, particularly where "GEO's contract with ICE explicitly requires it to comply with" state laws). Nor has plaintiff come close to meeting its burden of showing that § 101045 violates the field or obstacle preemption doctrines. *See California*, 921 F.3d at 885–86 (applying the presumption against preemption and finding that a California statute authorizing inspections of private immigration detention facilities was not preempted); *Puente Ariz. v. Arpaio*, 821 F.3d 1098, 1104 (9th Cir. 2016) (noting that the presumption against preemption applies "in both field and conflict preemption cases").

3. Within twenty-one (21) days of the date of entry of this order, plaintiff shall file either a first amended complaint or a notice of its intent not to do so.

IT IS SO ORDERED.

Dated: **May 1, 2025**

Dale A. Drozd
DALE A. DROZD
UNITED STATES DISTRICT JUDGE